**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0729-24

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOHNNY BE JONES, III, a/k/a
JOHNNY BE JONES, JOHNNY B.
JONES, JOHNNY BERNARD
JONES, and JOHNNY BERNARD
JONES, III,

    Defendant-Appellant.

_____

Submitted May 5, 2026 – Decided July 10, 2026

Before Judges Rose and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 13-05-1146 and 14-05-1287.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Theodore N. Stephens, II, Essex County Prosecutor, attorney for respondent (Lucille M. Rosano, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Johnny Be Jones, III appeals from an October 25, 2024 Law Division order denying without an evidentiary hearing his petition for post-conviction relief (PCR). After allowing discovery, the PCR judge issued a detailed written decision, thoroughly analyzing each issue raised under controlling law and denying defendant's petition without an evidentiary hearing. Because defendant failed to establish a prima facie claim for relief under Strickland v. Washington, 466 U.S. 668, 687 (1984), we affirm for substantially the same reasons set forth by the PCR judge in his comprehensive written decision.

I.

Following a ten-day trial, a jury found defendant guilty of murder and related weapons offenses. We recounted in detail the facts and procedural history underpinning defendant's offense and conviction in our prior opinion affirming the conviction and sentence on direct appeal. State v. Jones (Jones I), No. A-4707-16 (App. Div. Dec. 9, 2019). We distill the relevant facts from that decision, and the trial and PCR records that are pertinent to this appeal.

2

A-0729-24

Defendant's conviction followed the December 3, 2011 brutal murder of D.R.,[1] a go-go dancer last seen on the morning she was killed leaving the Doll House nightclub in Irvington with defendant and his friend and co-defendant, Brian Love. Almost two months later, D.R.'s body, wrapped in a bed sheet and gray sweatshirt, was discovered beneath a mattress in an empty lot in an "advanced" state of decomposition. An autopsy revealed forty-two stab wounds, some penetrating D.R.'s heart and lungs, eleven incision wounds, including one horizontally across her neck, and blunt force injuries. Defendant and Love were later arrested and charged with D.R.'s murder and related offenses after defendant's DNA was identified as a major contributor to samples taken from underneath D.R.'s fingernails and a minor contributor to samples from the sweatshirt wrapping her body, and Love's DNA was determined to be a minor contributor to D.R.'s fingernail samples.[2]

---

[1]  We use initials to refer to the victim to protect her privacy interests.

[2]  Defendant's DNA was obtained pursuant to several warrants. The first, an Essex County warrant issued September 21, 2012, ordered "law enforcement officers of the Essex County Prosecutor's Office, East Orange Police Department and other designated agencies shall detain [defendant] . . . for the purpose of obtaining . . . [h]air sample including follicles." Six days later, because defendant was then-located in Clayton County, Georgia, a Georgia judge issued a search warrant for "tangible evidence of the commission of the crime[]" of murder by defendant in the form of "genetic material (DNA)." In

The trial court imposed a strict plea cutoff before trial, directing, "When that jury comes through the door, the first panel, plea negotiations are over." In response, both the prosecutor and defense counsel confirmed no "other negotiations [were] necessary at th[at] time." Later, on January 5, 2017, after jury selection, but before testimony commenced, defense counsel advised he had approached the State with defendant's wish to discuss a possible guilty plea to twenty years' imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, but "that was not an option, as far as the State was concerned," as that proposal did not match "the number the[ State] ha[d] on the table, or in their heads at th[at] point."

The court then clarified:

> Once that jury came through the door, plea negotiations were over. The first panel. I made it clear to everybody. If the defendant wanted to plead guilty after that first panel came through that door, he c[ould] plead guilty to the indictment only and take his chances with the judge[] who would make a decision on the usual aggravating and mitigating factors as required by law.

---

addition to setting forth the facts supporting probable cause, the Georgia warrant authorized a buccal swab of defendant, which Georgia law enforcement then executed obtaining two buccal swabs from defendant.

Defense counsel stated, "I'm in complete agreement with that, Judge. I remember that conversation clearly." He added the State expressed no interest in "revising any plea offer, even if it was available from the court's perspective" and defense counsel wanted to make that clear for the record.

Trial commenced, and the evidence against defendant was strong. Testimony from various witnesses revealed defendant and Love arrived at the Doll House where D.R. was working the night before her murder. Defendant spent over one thousand dollars on liquor and lap dances, and witnesses described seeing D.R. drinking and dancing with defendant and Love before leaving with them at the end of her shift. There had been an earlier dispute, and D.R.'s coworker testified she warned D.R. not to leave with them, but D.R. told her "they offered to give extra money if [she] would go hang out with them." Although defendant consumed alcohol throughout the night, no witness described him as drunk, stumbling, or slurring his words. At one point defendant took the microphone from the deejay and announced he and his brother were in from "down south" celebrating his brother's "beating a murder charge."

Love testified against defendant at trial after pleading guilty to second-degree manslaughter pursuant to a plea agreement. He recounted going to the Doll House with defendant on the night of December 2, 2011, where defendant

5

and D.R. danced and drank with several other dancers until the club closed. Love recalled driving the three in defendant's "white" vehicle because defendant, although not "drunk," was not "fit to drive." Love testified, while driving to D.R.'s home with defendant in the back seat and D.R. in the front passenger seat, defendant began demanding D.R. move to the backseat. When D.R. refused, defendant grabbed D.R., pulled out a knife, and repeatedly stabbed her in the chest from behind before slitting her throat. Love stated he and defendant showered at defendant's apartment before driving to an empty lot where defendant discarded D.R.'s dead body, wrapped in clothing and blankets, under a mattress. Defense counsel cross-examined Love concerning prior inconsistent statements to police.

Defendant elected not to testify, representing to the court on the record he had multiple "lengthy discussions" with counsel, understood his rights, and chose not to testify, making the decision freely. The court determined defendant's decision was "knowing, intelligent, and voluntary." The trial court then denied defendant's request to charge the jury regarding the voluntary intoxication defense.

After the jury found defendant guilty of all counts, the trial court denied defendant's motion for a new trial finding it untimely and lacking merit.

A-0729-24

Following a sentencing hearing, at which defendant declined to speak, the court, after merger, imposed an aggregate term of sixty years' imprisonment and found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the circumstances and nature of the offense); three, N.J.S.A 2C:44-1(a)(3) (the risk of another offense); and nine, N.J.S.A 2C:44-1(a)(9) (the need to deter defendant and others), and no mitigating factors.

We affirmed defendant's conviction and sentence and, pertinent here, determined the trial court did not err in refusing to charge the jury on voluntary intoxication because the record did not support a jury's finding defendant's faculties were prostrated to a degree that would render him incapable of acting with intent. Jones I, slip op. at 11-12. We also concluded the prosecutor's comments in summation were proper or otherwise harmless and sufficiently addressed by the court's curative instructions. Id. at 15-20.

Thereafter, defendant filed a timely petition for PCR and moved for discovery to ensure his newly appointed PCR counsel possessed the complete trial record. We previously granted defendant leave to appeal and reversed the PCR judge's denial of defendant's motion to compel discovery and remanded the matter directing the State to produce trial discovery to PCR counsel. See State v. Jones (Jones II), No. A-2683-21 (App. Div. Oct. 14, 2022) (slip op. at 1, 11).

On remand, and after receiving discovery, defendant asserted ineffective assistance of trial counsel claiming alleged deficiencies in his representation, standing alone, and considered cumulatively, warranted relief. Specifically, defendant claimed trial counsel failed to: (1) obtain missing discovery, review available discovery,[3] or request an adjournment to allow for meaningful pretrial review of the State's evidence; (2) engage in effective plea negotiations or advise defendant of the strengths and weaknesses of the State's proof; (3) investigate or call witnesses on defendant's behalf; (4) advise defendant regarding the voluntary intoxication defense and trial strategy related to the defense or present at trial sufficient evidence to support the defense; (5) sufficiently counsel defendant regarding his decision whether to testify; (6) object to various remarks by the trial prosecutor in summation; (7) allow the State to present testimony of FBI Special Agent John Hauger concerning defendant's cell phone location data, instead successfully moving to bar Hauger's testimony; (8) move to suppress the

---

[3] Specifically, defendant noted nine allegedly missing witness statements made to law enforcement. The record does not contain any indication that these individuals gave formal written or recorded statements to detectives, and reflects only that they were questioned. The lead detective's investigative report summarized the information provided by each witness and provided the names and contact information for the individuals. Defendant did not allege he did not receive the detective's report or explain how obtaining any formal statements, assuming they existed, would have impacted the outcome of his trial.

DNA evidence; (9) advise defendant regarding lesser-included offenses and his need to testify to support reckless mens rea; (10) prepare defendant to speak at sentencing; (11) timely file a motion for new trial; and (12) seek to admit at trial Love's initial statement to police.

After considering written submissions and oral argument, the PCR judge, who presided over defendant's trial and denied his post-conviction motion to compel trial discovery, issued a twenty-one-page written decision, identifying controlling law and individually addressing and rejecting each of defendant's claims. Regarding defendant's claims trial counsel failed to obtain or review necessary discovery or seek an adjournment to do so, the judge found defendant never provided "an itemization of precisely what discovery was missing[] and the substantive impact it would have had on the outcome of the trial." The judge recognized defendant claimed nine witnesses provided information to police and trial counsel never obtained those statements. However, the judge noted the content of the witness statements were summarized in investigative reports, and defendant failed to "proffer[] some evidence of how proceeding to trial without that discovery prejudiced [him] at trial." The judge also concluded defendant's claims were belied by the record demonstrating "repeated instances of trial counsel's knowledge and understanding of the discovery."

9

The judge specifically rejected defendant's claims trial counsel was deficient for failing to investigate and call as trial witnesses Erica Hamilton, who advised police she observed D.R. leave the Doll House with defendant in a "black" vehicle, or Anthony Patterson, who frequently slept on the mattress under which D.R.'s body was found without detecting its presence. The judge found "trial counsel's decision not to interview and call [these] witnesses . . . d[id] not fall below the reasonable competence standard." The judge viewed any hypothetical impact of Hamilton's statement the car defendant and D.R. entered was black, when it was actually white, was clearly outweighed by Love's detailed trial testimony and DNA evidence connecting defendant to the murder. Regarding Patterson, the judge determined, "Within the larger context of the entire trial record, potential testimony about how the mattress felt when [Patterson] slept on it and how it may have smelled, cannot be viewed as meaningfully undercutting the State's presentation at trial."

Concerning defendant's claims trial counsel failed to sufficiently conduct plea negotiations, the judge found defendant's allegations "too speculative to pass muster," as any claim the case may have resolved by plea agreement was "hypothetical." He determined defendant did not present prima facie evidence

of "a viable plea offer" by the State about which trial counsel "affirmatively failed to advise [defendant]."

The judge similarly rejected defendant's claims trial counsel inadequately presented evidence of defendant's intoxication. He emphasized "the record demonstrate[d] that trial counsel elicited testimony . . . on the issue of [defendant's] alcohol consumption," and "by eliciting relevant testimony from multiple witnesses on this issue, trial counsel competently attempted to create a reasonable doubt as to [defendant's] sobriety." However, the judge noted, at trial he "validly denied" defense counsel's request for a voluntary intoxication defense. Finding defendant did not "address what specific evidence trial counsel ignored," the PCR judge determined defendant failed to "link the failed intoxication defense to a substandard performance by trial counsel." Additionally, the judge determined "[a]bsent any articulation" of how trial counsel's failure to inform defendant that the voluntary intoxication defense would be unsuccessful somehow prejudiced defendant, no hearing was warranted on this issue.

The judge also found defendant made no showing counsel was deficient in allegedly inadequately advising him of his right to testify or preparing him to testify would have changed defendant's election not to testify at trial. Noting a

11

defendant's choice to "testify in his own defense is often a double-edged sword," the judge observed that "[o]n this record, [defendant] fail[ed] to show how his lack of preparation for testimony would have either better informed him in his decision to testify, or that his testimony would have had a material impact on the result of the proceedings." Further, he cited defendant's clear expression on the record that he "had lengthy discussions on numerous occasions" with trial counsel about the choice to testify before deciding not to exercise his right.

As to defendant's claims concerning defense counsel's failure to object to the prosecutor's comments on summation, the judge concluded defendant's argument was barred by Rule 3:22-5 as defendant already "raised and argued [this] on direct appeal," and "the Appellate Division found no comments 'extensive nor inflammatory' enough to warrant relief." The judge alternatively found, "even if [defendant's] argument was not procedurally barred, the [] holding [on direct appeal] would still dictate that defendant cannot show a prima facie case of ineffectiveness of counsel" because "the prosecutor's comments at summation" were already determined as not "ris[ing] to the level of actionable misconduct." Thus, the judge reasoned trial counsel was not ineffective for failing to object to comments already found to have been, at worst, harmless.

The judge similarly determined defendant failed to sufficiently show trial counsel's successful motion to bar testimony from FBI Special Agent Hauger was deficient or prejudicial. Characterizing "[t]he preclusion of evidence" as "a strategic concern that counsel must delicately navigate" and "balance[] these competing interests to the greatest possible benefit to the defendant," the judge found trial counsel's decision to "preclude . . . testimony from a federal agent who had been using geolocated telecommunications data to track . . . defendant's cell phone on the night of an alleged murder" "well within the bounds of a reasonable strategic decision." The judge acknowledged "the preclusion of . . . Hauger's testimony came with both benefits and burdens," and while at some points it "contradicted the location and timeline narrative placed before the jury by . . . Love," it also "overlap[ped]" on "multiple points." Thus, "[g]iv[ing] great deference to the objectively reasonable strategic decisions made by trial counsel," the judge did not find counsel's successful effort to bar Hauger's testimony "objectively subpar."

The judge found defendant failed to present a legal argument in support of his claim trial counsel failed to move to suppress the DNA evidence. He determined defendant's petition "lack[ed] a legal basis for demonstrating the

A-0729-24

invalidity of the Georgia search warrant," and "[c]onsequently, the court presume[d] the warrant valid."

Finding "no rational basis" to charge lesser included reckless offenses after the trial court denied defendant a voluntary intoxication defense, the judge determined "trial counsel's decision to cease pursuing" instructions regarding those offenses "f[ell] squarely within the acceptable bounds of reasonably competent representation." The judge reasoned "trial counsel could not have reasonably believed there was a rational basis for instructing the jury on a lesser-included offense," emphasizing "the severity of the evidence indicating the violent nature of the murder." Further, the judge noted trial courts must sua sponte charge the jury on lesser-included offenses when warranted by the evidence and, at trial, he declined to do so.

In rejecting defendant's argument trial counsel failed to prepare him to speak at sentencing, the judge concluded defendant failed to specify what he would have said at sentencing that would have resulted in a lesser sentence. Noting defendant professed his innocence, the judge found this undermined his claims speaking at sentencing would have mitigated the ultimate sentence, as "[t]he omitted act must be causally determined to have had a prejudicial effect on the [defendant's] proceeding."

Likewise, the judge determined defendant did not sufficiently show prejudice resulting from defense counsel's untimely filing of a new trial motion, citing the prior substantive decision finding "[e]ven if it were not procedurally barred, defendant's motion is without merit." Characterizing trial counsel's out-of-time filing as "misguided," the judge found "nothing in this record demonstrates that the error worked to the detriment of [defendant]."

The judge also determined "there [wa]s nothing in the record that signal[ed] [defendant] was prejudiced by trial counsel's failure to enter . . . Love's first statement into evidence as a distinct exhibit," citing "[t]he readback that was offered to the jury, specifically upon their request, extensively detailed the omissions and inconsistencies." He noted "Love was thoroughly cross-examined about factual issues that were inconsistent with his initial statement, including lying about having the decedent's blood on him, destroying evidence after the murder, and a narrative regarding" Love's whereabouts after the murder. Thus, the judge concluded, "the jury was given the full opportunity to compare . . . Love's initial statement to his testimony at trial," and counsel's performance did not fall "below the standard of reasonable competent representation."

A-0729-24

Finally, the judge rejected defendant's cumulative error argument finding "there was no cumulative error" and highlighting the reasons discussed under each of the above points. This appeal followed.

## II.

Defendant presents the following points for our consideration:

POINT I

DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL.

A. FAILURE TO PROVIDE DEFENDANT WITH DISCOVERY PRIOR TO THE SETTING OF THE TRIAL DATE, FAILURE TO REVIEW THE DISCOVERY WITH HIM PRIOR TO SETTING THE TRIAL DATE, AND FAILURE TO REQUEST AN ADJOURNMENT OF THE TRIAL AFTER RECEIVING ADDITIONAL DISCOVERY IMMEDIATELY PRIOR TO THE COMMENCEMENT OF TRIAL.

B. FAILURE TO REVIEW THE PLEA OFFER IN CONJUNCTION WITH A COMPLETE REVIEW OF THE STRENGTHS AND WEAKNESSES OF THE STATE'S PROOFS; AND FAILURE TO REQUEST A FINAL PRETRIAL CONFERENCE AFTER TRIAL COUNSEL RECEIVED DISCOVERY FROM THE STATE IMMEDIATELY PRIOR TO THE BEGINNING OF TRIAL.

C. FAILURE TO INVESTIGATE, INTERVIEW, AND CALL POTENTIAL FACT WITNESSES TO TESTIFY AND WHOSE TESTIMONY WOULD

16

HAVE CONTRADICTED THE STATE'S THEORY OF THE CASE AND/OR SUPPORTED THE DEFENSE.

D. FAILURE TO DISCUSS THE TRIAL STRATEGY OF RELYING ON A DEFENSE LEGAL THEORY AND THE STANDARDS OF PROOF NEEDED TO ESTABLISH VOLUNTARY INTOXICATION SUFFICIENT TO NEGATE AN ESSENTIAL ELEMENT OF THE CHARGED OFFENSES; FAILURE TO DISCUSS THE DETAILS OF THE TESTIMONY NEEDED TO PROVIDE A FACTUAL PREDICATE TO SUPPORT THIS DEFENSE.

E. FAILURE TO PREPARE DEFENDANT TO TESTIFY, INCLUDING ON THE DIFFERENCES BETWEEN DIRECT AND CROSS-EXAMINATION.

F. FAILURE TO OBJECT TO THE STATE'S COMMENTS DURING SUMMATION THAT REFERRED TO THE DEFENDANT'S RIGHT TO REMAIN SILENT.

G. ERROR IN MOVING TO BAR [SPECIAL AGENT] JOHN HAUGER FROM TESTIFYING AND/OR RECALLING HIM TO TESTIFY DURING THE DEFENSE PRESENTATION.

H. FAILURE TO FILE A MOTION TO SUPPRESS DNA EVIDENCE.

I. FAILURE TO DEVELOP FACTS TO SUPPORT A REQUEST FOR LESSER-INCLUDED OFFENSES AS PART OF THE JURY CHARGE.

J. FAILURE TO PREPARE DEFENDANT TO SPEAK AT THE SENTENCING.

17

K.  FAILURE TO FILE THE MOTION FOR A NEW TRIAL WITHIN THE TIME PERIOD PRESCRIBED BY COURT RULE.

L.  FAILURE TO MOVE TO ADMIT FIRST STATEMENT OF BRIAN LOVE.

POINT II

[]DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO THE CUMULATIVE EFFECT OF REPETITIVE ERRORS BY THE TRIAL ATTORNEY.

We review a judge's decision to deny PCR without an evidentiary hearing for abuse of discretion.  State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)).  As here, when a "[PCR] court does not hold an evidentiary hearing," this court "may exercise de novo review over the factual inferences the trial court has drawn from the documentary record."  State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020) (alteration in original) (quoting State v. O'Donnell, 435 N.J. Super. 351, 373 (App. Div. 2014)).

A PCR evidentiary hearing need not be granted simply upon request.  State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).  Indeed, evidentiary hearings are required only when

> (1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved

18

by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted.

[State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Porter, 216 N.J. 343, 354 (2013)); see also R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory[,] or speculative").]

"If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." Brewster, 429 N.J. Super. at 401 (omission in original) (quoting Marshall, 148 N.J. at 158).

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

19

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999). Further, "[a]ny factual assertion that provides the predicate for a claim of relief must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant before the court may grant an evidentiary hearing." R. 3:22-10(c). Defendants "must do more than make bald assertions" to merit consideration. Cummings, 321 N.J. Super. at 170.

Ultimately, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Strickland, 466 U.S. at 691. Under Strickland's second requirement, a defendant must also show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Errors with "some conceivable effect on the outcome" fall short of

20

warranting relief. Id. at 693. Importantly, "[a]lthough a demonstration of prejudice constitutes the second part of the Strickland analysis, courts are permitted leeway to choose to examine first whether a defendant has been prejudiced." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing Strickland, 466 U.S. at 697).

Having reviewed defendant's arguments and the record under these guiding legal principles, we affirm the order denying PCR substantially for the reasons stated in the judge's thorough written decision, with one exception. Although we similarly reject defendant's claim he was deprived of effective assistance of counsel because trial counsel failed to object to the prosecutor's summation, we do not view the claim as procedurally barred by Rule 3:22-5. Although we previously concluded the prosecutor's comments did not rise to the level of reversible error, we did not, because we could not, consider whether trial counsel was effective in refraining from objection. See State v. McQuaid, 147 N.J. 464, 484, 688 A.2d 584 (1997) (recognizing "claims that differ from those asserted below will be heard on PCR"). However, as the PCR judge alternatively recognized, defendant's argument failed on the merits. We are satisfied defendant did not make a prima facie showing of a reasonable likelihood "the result . . . would have been different," see State v. Gideon, 244

21

N.J. 538, 551 (2021), had trial counsel objected to comments we already determined were fair or alternatively harmless. See Jones I, slip op. 15-20. As with all defendant's claims, we conclude he failed to present prima facie evidence the claimed deficiency rose to a level of materiality to overcome the ample evidence against him and impact the outcome.

To the extent we have not addressed any additional arguments raised by defendant, we determine they lack sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hawley

Clerk of the Appellate Division